The last case on today's docket is the case of People v. Turner. We have Amy Rose for the appellant and Rebecca McCormick for the appellant. May it please the Court. I am Amy Rose with the Office of the State Appellate Defender. I represent Randall Turner. I stand on my brief in regard to the first issue unless this Court has any questions. Today I will discuss why the trial court abused its discretion and violated Mr. Turner's due process right to the presumption of innocence when it admitted three recordings of telephone conversations that indicated he was incarcerated at the time the calls were placed. The jury should not have known that Mr. Turner was incarcerated prior to his trial. Mr. Turner's defense counsel objected to the admission of a portion of the telephone call which stated, quote, this is a call from the Effingham County Jail, end quote. But over her objection, the Court allowed it in. Mr. Turner's defense attorney filed a motion and specifically requested the exclusion of the audio recordings, more specifically the reference to the fact that Mr. Turner was in jail at the time the calls were placed. While there are no cases directly on point, by the Court allowing these telephone recordings into evidence with the beginning of each call, the statement that the call was coming from the Effingham County Jail, this is similar to a court requiring a defendant to wear prison attire during a jury trial. This practice has been forbidden as a violation of a defendant's due process rights as indicated by United States v. Martin in 1992. Also, in United States v. Owens, the Court allowed a telephone recording between the defendant and his uncle into evidence. However, during the conversation, the defendant admitted to committing the crime that he was being held for. Because the defendant admitted to the crime in the conversation, the Court held that the probative value outweighed the prejudicial effect. Mr. Turner's case is different because Mr. Turner never admitted to the crime he was being held for. In all the calls with Mr. Pendergast, Mr. Turner discussed the pending case and upcoming trial. The State argued that in each of the conversations, it showed Mr. Turner's consciousness of guilt and state of mind. Now, in the first conversation, Mr. Turner told Mr. Pendergast, quote, that he would, I'm sorry, quote, hook him back up with a car, end quote. In the call, Mr. Turner admitted that his brother Duane was driving the vehicle that was involved in the accident that Sunday evening in question.  In the second conversation, Mr. Turner was talking to Mr. Pendergast, and Mr. Turner refreshed his recollection of the events of the night in question. At the time of the call, the accident had occurred five months prior. Mr. Pendergast has a medical condition that affects his memory. Mr. Turner, being a friend of his, knew that this medical condition, that Mr. Pendergast had this medical condition. However, the State argued that Mr. Turner was coaching the witness. Finally, to hammer home to the jury that Mr. Turner was in jail, during the State's direct examination of Mr. Pendergast, he asked Mr. Pendergast if, quote, in recent times, end quote, Mr. Pendergast had any discussions with Mr. Turner regarding the case. Mr. Pendergast said yes, and the State asked if it occurred while Mr. Turner was in jail. Mr. Pendergast said yes. Once again, this is improper and irrelevant. Between the failure to redact the portion of the recording, quote, this is a call from the Effingham County Jail, end quote, to the improper reference by the State during the direct examination of Mr. Pendergast, this is a clear violation of Mr. Turner's due process rights, more specifically, the violation of his presumption of innocence. In United States v. Harris from 1983, the court held the defendant's due process rights were violated when the defendant was required to attend jury selection in prison attire. The court drew a distinction between the mere evidence of an arrest, since a jury can assume that a defendant was arrested. However, not all defendants are incarcerated. Harris held that the only purpose in forcing a defendant to wear prison attire is to demean and humiliate the defendant. As was the case in Harris, the only purpose served by playing the recordings without the redaction of the jail reference was done to intentionally harm and demean Mr. Turner in front of the jury. Was any kind of limiting instruction given? There was, Your Honor. And it said that not necessarily to the recordings, to the portion regarding the fact that he was in jail, but there was a limiting instruction because he was charged with aggravated driving while under the influence, so they gave a limiting instruction regarding that charge. Well, really I'm talking about as to the portion of the recording, he was in jail, or did the defense counsel submit anything, any kind of a proposed limiting instruction? In the state's brief, it cites several cases that can easily be distinguished from Mr. Turner's. First, in People v. Manning, the state claimed it stood for the proposition that the admission of audio recorded evidence at trial is a matter within the trial court's discretion. The case actually said the admission of evidence at trial is a matter within the trial court's discretion. In Manning, the court does discuss the subject of audio recordings, but only in the context of inaudibility, and if the recording is inaudible, it will not be admitted into evidence. The state also argues that Mr. Turner's case can be compared to the defendant in United States v. Johnson. In Johnson, the defendant did not make any request to exclude the evidence before or during trial. In Mr. Turner's case, his trial counsel filed a motion and specifically requested the reference to the fact that Mr. Turner was in jail be excluded. Further, Mr. Turner did not make any threats in any of the phone calls, unlike Mr. Johnson. Does the court have any questions? I don't think so. Thank you. Because the court abused its discretion and violated Mr. Turner's due process right to the presumption of innocence when it admitted the telephone conversations recorded while Mr. Turner was in jail, this cause must be remanded for a new trial. Thank you, Ms. Rose. You will have the opportunity for rebuttal. Ms. McCormick? Your honors, counsel, the defendant hasn't argued his issue one, and for that reason, the people will rest on their wreath in that. But as to issue two, the admission of the three recordings from the Abraham County Jail, the court weighed the prejudicial value versus the probative value, the prejudicial effect versus the probative value, and this court is to examine that decision under the abuse of discretion standard. There are two federal cases, one cited by the defendant, Owens, and then also Johnson, which is published. Owens is not, but it's still by federal rule citable, very much unlike our Rule 23 orders. So this court can find those two authorities persuasive, and people ask that you do so. In Owens, the defendant was in jail when he placed a call, and in the call, he confessed that he was being held for a crime that he did commit.  Owens found that, unlike Harris, in which having a defendant appear before the jury in prison guard is highly prejudicial, and it has no probative value of any sort, this is different. They said that most defendants are, and juries understand this, most defendants are arrested and arraigned, and they are in jail at some point in time when they're being charged with a crime. And so the prejudicial effect of the jury learning that he placed a call from the jail is slight in comparison with the probative value in Owens of the confession. In Johnson, which is a Seventh Circuit case, the defendant made a call from the Perry County Jail. Johnson also, the court in Johnson also found that that was admissible. It weighed, you know, citing Owens, it weighed the prejudicial effect of the jury learning that he was in the Perry County Jail against the probative value of what was said in the conversation, which could have been a coded instruction to intimidate a witness, an informer, an informant. And so the court permitted that, and it was affirmed. In both Owens and Johnson, the court found that the prejudicial effect of the jury learning that calls were placed from jail was slight, and they didn't give it much weight. But then they weighed it against the probative value of what the state was trying to get in. And, you know, in any given case, you know, the probative value might not be as great, and perhaps it would be an abuse of discretion. But not in this case. In this case, much like Johnson, you have a defendant who is basically trying to tamper with a witness. He's in his conversation with the witness, who is going to be. He was called, and he did go and testify. But his conversation, the three conversations with the witness were highly probative of his consciousness of guilt, and his attempt to tamper with this witness. It's true, Mr. Pendergrast had memory problems, medical condition, and his call, you know, jury, was informed of that. They could have taken it that way. They could have taken it in the light favorable to the defendant, but apparently they didn't. So, I mean, there's nothing about that that the jury didn't find out. In the first, in the conversations, he coached Mr. Pendergrast. Mr. Pendergrast was the owner of the car that the defendant was apparently driving when he was driving under the influence and had the wreck and left the scene. He coached him about what to say. He said that he was reminding that Pendergrast had left on Friday and did not see the defendant in the car on Sunday, and that Pendergrast had no idea who had the car that weekend. And then he stated, that's what I want you to say. So that's a little bit different than just trying to jog his memory or help him remember what was going on. This was, this is what I want you to say. That is what I want you to say. And then he assures Pendergrast that he'll get him another car. Then further on in the conversations, he says, he tells Pendergrast that his brother Bubba was really driving the car. Pendergrast responds, your brother Bubba had it? And the defendant replies, yeah. So he's coaching the witness to believe that, well, that Bubba really was driving the car. And then at the end, Pendergrast indicates that, well, he's just not going to show up to testify at the trial. And then there's this hearty appreciation from the defendant about that Pendergrast is not going to show up, and relief, I'm sure. So these statements were indicative of consciousness of guilt, indicative of trying to coach this witness to say something that would be helpful or perhaps even encouraging them to show up at all. That's all consciousness of guilt. The court weighed this. The court also redacted parts of it, the parts that referred to a cannabis charge that isn't relevant and probative of anything. That was ordered redacted. The court didn't think that the mere fact that the jury would learn that the defendant was in jail was very significant. The court was very careful to make sure that none of the dates of these calls were given to the jury, and the court was careful to make sure that the jury did not learn that the defendant remained in jail during the whole time. They just merely learned that he was incarcerated in the Effingham County Jail at the time of the conversations. And, yes, there were jury instructions. The jury instruction on the presumption of innocence and the burden of proof also helped the jury weigh this. And then there was an instruction that there was evidence received that the defendant was involved in other conduct and that charged in the indictment, and they were to consider this evidence only for the limited purpose of the issue of the defendant's consciousness of guilt. This wasn't aimed at... I mean, it didn't specifically say what the other conduct was, so it applied equally to this conduct. This conduct of calling and tampering with a witness is other conduct, and they were instructed to only consider that on the issue of the defendant's consciousness of guilt. So it was limited, and the defendant doesn't claim that the jury couldn't follow this instruction. So all in all, the court went through the right analysis. The court properly weighed the prejudicial effect versus the probative value and made sure that the jury wasn't informed of things that they shouldn't know and made sure the jury was only informed through these conversations that the defendant was in jail when he placed the call. So this court should find that there was no abuse of discretion and that the defendant received a fair trial and affirmed. Thank you. Thank you, Mr. McCormick. We have rebuttal. The state mentioned several times that the court weighed the probative value of the telephone conversations against the prejudicial effect that these conversations would have. And while the opinion says that and the record reflects that, we argue that there was nothing probative in those telephone conversations. In the first conversation, he talked about how his brother was driving the car on Sunday evening, not himself. In the second conversation, he talks about one thing that the state failed to mention. He mentions that he needs money, and he's asking Mr. Pendergast for money. And that was actually redacted because the court found that they didn't want the jury to know that he was incarcerated. So that was actually redacted, but not the reference to the fact that the calls were being placed from the jail. The prejudicial effect is not slight because the state argued that there really wasn't a time frame as to when these conversations happened. But in the record, it shows that during, and I mentioned earlier that when the state was questioning Mr. Pendergast about his conversations with Mr. Turner, he asked if those conversations occurred in recent times. Mr. Pendergast said yes, and he said, did this occur while Mr. Turner was in jail? Mr. Pendergast said yes. So we argue that there was sort of a time frame placed on these telephone calls. The juror heard that they were made recently and while Mr. Turner was in jail. And she also argued that whenever a jury does find that a defendant had been incarcerated at some point or may be incarcerated, it's not really the prejudicial effect that's slight. And I argue that the prejudicial effect is great. It leaves wondering thoughts in jurors' minds. They sit and they look and they wonder, okay, is he a deadbeat because he can't get out? Is he poor and that's why he can't get out of jail? Or is this person so dangerous that they're not going to let him out? So it leaves so many questions in the juror's mind as to why that person is in jail. Like I mentioned just a couple of minutes ago, in one of the motion hearings, the judge did state that the portion of the recording in one of the telephone calls where Mr. Turner is asking Mr. Pendergast for money, that that be redacted. And the reason why, the judge wanted that part out because it implied that he's in custody. But yet they left the beginning in. That was certainly implied that he was in custody because it said the call was being made from the jail. So once again, we ask this court to remain to the trial court for a new trial. Thank you. Thank you, Mr. Cormack, for your briefs and arguments, and we'll take them under advisement when we're ruling. This court is adjourned.